IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRIAN T. GAUDREAU and<br>ELIZABETH A. GAUDREAU,<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)     Case No. 13-1180-JWL<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Plaintiffs filed this case seeking refunds of federal income taxes. This matter presently comes before the Court on cross-motions for summary judgment filed by plaintiffs (Doc. # 23) and defendant United States (Doc. # 21). As more fully set forth below, the Court concludes as a matter of law that plaintiff Brian Gaudreau did not have an "economic interest" in certain oil and gas deposits, and that plaintiffs therefore are not entitled to the depletion deduction and capital gains treatment that they seek. Accordingly, the Court **denies** plaintiffs' motion for summary judgment, and it **grants** summary judgment in favor of defendant on plaintiffs' refund claims.

## I.   **Background**

The following facts are undisputed.  Plaintiffs Brian and Elizabeth Gaudreau are a husband and wife residing in Wichita, Kansas.  On November 1, 1988, Brian Gaudreau began his employment with Stelbar Oil Corporation ("Stelbar").  At the same time, Stelbar and Mr. Gaudreau executed an "Employee's Incentive Agreement" (the "Agreement").  In the Agreement, Stelbar promised to pay Mr. Gaudreau "bonuses" equal to a percentage of the net income produced by oil and gas properties purchased by Stelbar through the efforts of Mr. Gaudreau.  Mr. Gaudreau eventually received payments under the Agreement for properties acquired in 1990, 1994, and 1997.

The present case concerns income received by Mr. Gaudreau under the Agreement in 2006, 2007, and 2008.  In their joint tax returns for those years, plaintiffs treated that income as regular income.  Plaintiff subsequently filed amended returns in which they claimed depletion deductions (for income from proceeds on producing properties) and capital gains treatment (for income from the sale of properties by Stelbar) for income received under the Agreement.  Defendant denied or failed to act on plaintiffs' refund claims.  Plaintiffs have thus brought this action for refunds pursuant to 26 U.S.C. § 7422.  Specifically, plaintiffs seek refunds in the amounts of $485,632 for 2006, $19,167 for 2007, and $5,202 for 2008.

2

II.     **Analysis**

Each side seeks summary judgment on plaintiffs' claims.  Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).

The Internal Revenue Code allows for a depletion deduction for "mines, oil and gas wells, other natural deposits, and timber."  *See* 26 U.S.C. § 611.  The applicable regulation, Treasury Regulation § 1.611-1, provides that such a deduction may only be taken by an owner of an "economic interest" in the mineral deposits, as follows in relevant part:

> Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber.  An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital.  . . .  A person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production.  For example, an agreement between the owner of an economic interest and another entitling the latter to purchase or process the product upon production or entitling the latter to compensation for extraction or cutting does not convey a depletable economic interest.

*See* 26 C.F.R. § 1.611-1(b)(1); *see also, e.g.*, *United States v. Swank*, 451 U.S. 571, 579-80 (1981) (applying this regulation).  This regulation, which has remained essentially the same since it was first promulgated in 1939, was based on language from the Supreme

Court's opinions in *Palmer v. Bender*, 287 U.S. 551 (1933), and *Helvering v. Bankline Oil Co.*, 303 U.S. 362 (1938). *See Parsons v. Smith*, 359 U.S. 215, 221-23 (1959) (citing *Palmer*, 287 U.S. at 557, and *Bankline*, 303 U.S. at 367).

The Supreme Court has explained the depletion deduction as "resting 'on the theory that the extraction of mineral gradually exhausts the capital investment in the mineral deposit,' and therefore the depletion allowance permits 'a recoupment of the owner's capital investment in the minerals so that when the minerals are exhausted, the owner's capital is unimpaired.'" *See Swank*, 451 U.S. at 576 (quoting *Commissioner of Internal Revenue v. Southwest Exploration Co.*, 350 U.S. 308, 312 (1956)).  In *Palmer*, the Supreme Court first set forth the relevant test as follows:

> The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.

*See Palmer*, 287 U.S. at 557.  The Supreme Court subsequently divided the test for determining whether there is the required "economic interest" into two distinct prongs, *see Southwest Exploration*, 350 U.S. at 314, set forth by the Tenth Circuit as follows:

> (1) there must be an interest, acquired by capital investment, in the minerals in place; and (2) the return on the investment must be realized solely from the extraction of the minerals.

*See Freede v. Commissioner of Internal Revenue*, 864 F.2d 671, 673-74 (10th Cir. 1988) (citations omitted); *see also Rissler & McMurray Co. v. United States*, 480 F.2d 684, 686 (10th Cir. 1973) (stating the "economic interest" test as having these two prongs).

4

The parties agree that the same "economic interest" test should be used to determine whether plaintiffs are entitled to capital gains treatment in this case. *See Briscoe v. United States*, 536 F.2d 353, 357 (Ct. Cl. 1976) (applying the same "economic interest" test for the depletion allowance to the issue of capital gains treatment) (citing *Wood v. United States*, 377 F.2d 300, 305 (5th Cir. 1967)); *see also United States v. White*, 401 F.2d 610, 613 (10th Cir. 1968) (noting that the "economic interest" test from *Palmer* came to be used to decide whether a transaction was a sale or lease in capital gains cases).

Thus, both the depletion refund claims and the capital gains refund claims in this case turn on whether Mr. Gaudreau had an economic interest as defined by the Supreme Court and Regulation 1.611-1. In their cross-motions for summary judgment, both sides argue that the issue may be decided at this stage as a matter of law.

The Court first addresses the first prong of the test. Plaintiffs concede, and the Supreme Court cases and the applicable regulation confirm, that Mr. Gaudreau must have made an investment of capital in order to have acquired the requisite economic interest. Plaintiffs do not argue that Mr. Gaudreau invested any real property, money, or other personal property to the development of the minerals on these properties. Rather, plaintiffs argue that the time, skill, and experience provided by Mr. Gaudreau in locating properties for Stelbar constituted a capital investment for purposes of providing him with an economic interest. The Court rejects that argument as a matter of law.

The Court concludes that the Supreme Court's requirement of an investment of

5

capital does not allow for the contribution only of such traits as time, skill, and expertise. The use of the word "capital" clearly connotes an investment of real property, money (or its equivalent), or other personal property.   Plaintiffs have not cited any authority suggesting that a person may make a "capital investment" of mere service or of such traits not constituting property, nor has the Court located any such authority.   In fact, in *Parsons*, the Supreme Court rejected the argument by certain taxpayers seeking a depletion allowance "that by their contracts to mine the coal, and particularly by contributing their equipment, organizations *and skills* to the mining projects as required by those contracts, they, in legal effect, made a capital investment in, and thereby acquired an economic interest in, the coal in place."   *See Parsons*, 359 U.S. at 224 (emphasis added).   The Supreme Court ruled in that case that the taxpayers had only obtained an economic advantage from the production of the mineral, and not an economic interest, and thus had not made a capital investment in those minerals in place. *See id.* at 224-26.   The Court has also located one case in which the United States Tax Court concluded that an engineering company, which had received an assignment of a mineral interest in exchange for consulting services, had not made a capital investment, as required under the *Palmer* test.   *See James A. Lewis Eng'g, Inc. v. Commissioner of Internal Revenue*, 39 T.C. 482, 491-92 (1962), *aff'd on other grounds*, 339 F.2d 706 (5th Cir. 1964).   Thus, the Tax Court ruled that the engineering company was not entitled to an exception provided by the IRS for drillers and equipment dealers who acquire economic interests through capital expenditures, with respect to the question of whether

6

the company had received taxable income.  *See id.*[1]

Moreover, in *Freede*, the Tenth Circuit found it "telling" that the Supreme Court had found an economic interest in only one case—*Southwest Exploration*—in which "a fee or leasehold interest in the mineral property was lacking."  *See Freede*, 864 F.2d at 674.  In *Southwest Exploration*, certain property owners received a share in net profits from a drilling operation using their property to access deposits lying off the coast of California.  *See Southwest Exploration*, 350 U.S. at 309.  In finding that the property owners had an economic interest for purposes of the depletion allowance, the Court relied on the fact that state law required the consent of the property owners for the driller to acquire the drilling rights, which meant that the property owners had played a "vital role," without which there would have been no production.  *See id.* at 315.  The driller expressed its concern to the Court about the possible difficulty in limiting the allowance "in instances of strangers 'disassociated from the lease' who may have contributed an essential facility to the drilling operation in return for a share of the net profits."  *See id.* at 316.  In response, the Court noted that the property owners in that case could hardly be said to be "disassociated from the lease," and it stressed that its holding was limited

---

[1]Because it affirmed the Tax Court on another basis, the Fifth Circuit determined that it was not necessary to determine "whether there is an exception for compensation in the form of an assignment of a depletable interest in oil for the engineering services performed by the petitioner."  *See James A. Lewis Eng'g, Inc. v. Commissioner of Internal Revenue*, 339 F.2d 706, 709 (5th Cir. 1964).  The Fifth Circuit offered, however, that on that question, it "would have great difficulty accepting a construction of the Code that would fly in the face of the general provisions of the tax laws to the effect that compensation for services must be returned as a part of gross income."  *See id.*

to the circumstances of that case, in which "a party essential to the drilling for and extraction of oil had made an indispensable contribution of the use of real property adjacent to the oil deposits." *See id.* at 316-17; *see also Freede*, 864 F.2d at 674-75 (noting that the Supreme Court in *Southwest Exploration* was careful to limit its holding to the facts before it).

Thus, the Tenth Circuit has emphasized that the Supreme Court has found an economic interest in the absence of an actual legal interest in the mineral deposit only in one case involving special circumstances in which the investment of real property was essentially required by state law. In light of that pattern of rulings noted by the Tenth Circuit, this Court is convinced that neither the Tenth Circuit nor the Supreme Court would consider Mr. Gaudreau to have acquired an economic interest based on an investment of capital in this case, in which he did not acquire any legal interest in the minerals and did not contribute any real or personal property, but instead invested only his time, skill, and expertise.

The Court does not agree with plaintiffs that the present case is analogous to *Southwest Exploration*. Again, in that case, the Supreme Court relied on the fact that the involvement of the adjacent property owners was essentially required by state law, and it was careful to note the "vital" and "essential" role played by those owners, without whose participation, there would have been no production. Mr. Gaudreau's role in the mineral development and production in this case was far less crucial. Plaintiffs insist that no production would have occurred if Mr. Gaudreau had not first located the

properties.  Mr. Gaudreau's involvement was not required for the production to occur, however, as Stelbar might have located those same properties without his help. Certainly, his locating services do not equate with the contribution of a real property interest by the landowners, as required by law, to which circumstances the Supreme Court limited its ruling in *Southwest Exploration*.  Thus, that case does not compel or even weigh in favor of finding an economic interest here.

Plaintiffs' claims are also doomed by a consideration of the second prong of the "economic interest" test from the Supreme Court, which requires that the return on the capital investment be realized solely from the extraction of the minerals.  Plaintiffs argue that Mr. Gaudreau was compensated for his investment of his time, skill, and experience (in locating properties for Stelbar to purchase) only through payments under the Agreement.  Specifically, plaintiffs argue that Mr. Gaudreau's regular salary served as compensation only for his duties for Stelbar as a landman (which compensation was consistent with that received by landmen at similar companies), and that his additional work locating properties was therefore compensated only through the payments under the Agreement based on the extraction of minerals.

That argument, however, is effectively rebutted by the terms of the Agreement. The Agreement provided that Mr. Gaudreau was an employee of Stelbar who would be involved with the activities of a new division that would purchase oil and gas properties; that the "bonus" arrangement furthered Stelbar's desire to provide Mr. Gaudreau with "incentives" to encourage his continued employment and dedication to the success of the

9

new division; and that the Agreement was to be deemed a supplement to Mr. Gaudreau's basic employment agreement. Thus, the language of the Agreement does not support the interpretation that Mr. Gaudreau was separately compensated for his landman duties by his regular salary and for his property-location duties by the bonus payments; rather, the Agreement indicates that Mr. Gaudreau's regular duties as an employee of Stelbar would include work locating properties for the new division, and that the bonus payments were intended to provide a supplement to his regular salary as an additional incentive for his good work for that division *and for his continued employment*. Thus, the Agreement indicates that Mr. Gaudreau could also look to his regular salary for a return on his investment of his time, skill, and experience in locating properties.

Moreover, under the Agreement, Mr. Gaudreau would share in profits not only from the extraction of minerals by Stelbar, but also from the sale of the properties themselves. Indeed, plaintiffs' capital gains claims relate to that latter form of income under the Agreement. Thus, Mr. Gaudreau's entire interest under the Agreement— including his investment of time, skill, and experience in locating a property—was not necessarily compensated solely from the extraction of the minerals, as he could still receive a share in any additional profit from the sale of that particular property. As the Supreme Court stated in *Southwest Exploration*:

> The second factor has been interpreted to mean that the taxpayer must look solely to the extraction of oil or gas for a return of his capital, and depletion has been denied . . . where payments might have been made from a sale or any part of the fee interest as well as from production.

*See Southwest Exploration*, 350 U.S. at 314 (citing *Anderson v. Helvering*, 310 U.S. 404, 412-13 (1940)); *see also Rissler*, 480 F.2d at 687-88 (Tenth Circuit concluding that second prong of test was not satisfied where the contracts that provided for profits from extraction also provided for other payments).

Plaintiffs argue that the so-called *Parsons* factors weigh in favor of finding an economic interest in this case, but the Court does not agree. In *Parsons*, the Supreme Court pointed to seven facts that supported its rejection of a claim of an economic interest. *See Parsons*, 359 U.S. at 225. Because those facts were particular to that case, they are not especially helpful as a test for all cases. Nevertheless, the Court notes that a number of similar circumstances are also present here—Mr. Gaudreau's investment was not in the mineral in place (but was instead in providing a service locating properties); the landowner (Stelbar) did not surrender or agree to surrender an actual capital interest in the mineral in place; and the mineral at all times belonged to others. *See id.* In *Parsons*, the Court particularly relied on the fact that although "the parties might have provided in their contracts that petitioners would have some capital interest in the coal in place," "they did not do so—apparently by design." *See id.* Similarly, in the present case, the Agreement did not convey to Mr. Gaudreau any interest in the minerals; rather, the Agreement specifically provided that Mr. Gaudreau would receive only "bonuses", and that he did not receive any ownership interest in the properties. Thus, the Court cannot say that the Supreme Court's reliance on certain facts in *Parsons* to reject a claim of an economic interest should lead to the opposite result in this case.

11

In other words, plaintiffs may be able to distinguish *Parsons* from this case on the facts, but distinguishing that case does not make up for the failure to satisfy the requirements (recognized in *Parsons*) of a capital investment and having to look solely to extraction for return of that investment.

Similarly, the Court does not agree that certain factors listed by the Tenth Circuit in *Freede* weigh in plaintiffs' favor. In that case, the court stated as follows:

> Whether there is an "interest" in minerals in place depends upon an evaluation of various factors, including: (1) the degree of legal interest in the minerals; (2) whether there is significant control over the mineral deposits; (3) the extent of contribution to the development or operation of the mineral extraction; (4) risk of loss; and (5) whether the interest is necessarily depleted as the mineral is extracted.

*See Freede*, 864 F.2d at 674 (citations omitted). The first factor is not satisfied here, as Mr. Gaudreau did not obtain any legal interest in the oil and gas on Stelbar's properties. As discussed above, with respect to this first factor, the *Freede* court noted that only in a single case, *Southwest Exploration*, had the Supreme Court found an economic interest in the absence of a fee or leasehold interest in the mineral property, and the Tenth Circuit stressed that in that case, at least the third factor had been met. The third factor does *not* weigh in plaintiffs' favor in the present case, however, as Mr. Gaudreau's contribution to the development and operation of the mineral extraction was minimal, consisting only of his identification of the property as a potential target for purchase by his employer (at which time his involvement ended). Nor is the second factor satisfied here, as the Agreement gave Mr. Gaudreau no control over the mineral deposits. With respect to the

fourth factor, Mr. Gaudreau did not risk losing any investment of real or personal property. Finally, with respect to the fifth factor, the Court notes (as it noted above) that Mr. Gaudreau's entire interest under the Agreement was not necessarily depleted as the minerals were extracted from a property because he could still receive a share in any profit from the sale of the real property itself; and he was still compensated for any investment of time as an employee of Stelbar. Thus, these factors identified by the Tenth Circuit weigh overwhelmingly against finding an economic interest in this case (even apart from the failure to satisfy the two-part test from the Supreme Court and the regulation).

Much of plaintiffs' argument focuses on their insistence that the Agreement provided Mr. Gaudreau with a "net profits interest" in the minerals. Whether or not that is the case (the Agreement does not contain any such language), plaintiffs have not provided persuasive authority that the existence of such an interest alone is sufficient to satisfy the requirement of an economic interest under the Supreme Court's test and the regulation. Plaintiffs rely on language from *Burns v. Commissioner of Internal Revenue*, 78 T.C. 185 (1982), in which the Tax Court, in explaining what a "net profits interest" is, included the following description from a treatise: "A net profits interest is an economic interest in oil and gas and is accordingly entitled to the depletion allowance." *See id.* at 209 (citing H. Williams & C. Meyers, *Oil and Gas Terms* 362 (4th ed. 1976)). Although that statement seems absolute, the Court cannot conclude that the Tax Court intended to rule that all net profits interests qualify for the depletion deduction. Indeed,

in the same opinion, the Tax Court appreciated the distinction that not all net profits interests were necessarily economic interests, in noting the following: "Numerous Supreme Court cases deal with net profits interests but the tax implications in those cases were not whether a given interest was a net profits interest, but rather whether a given net profits interest was an economic interest entitling its holder to a deduction for depletion." *See id.* at 208.  Moreover, in one of the cases cited by the Tax Court for that statement, *Kirby Petroleum Co. v. Commissioner of Internal Revenue*, 326 U.S. 599 (1946), the Supreme Court ruled that a right to share in net profits could qualify for the depletion allowance, but it emphasized that such an interest must amount to an economic interest based on a capital investment in order to qualify.  *See id.* at 606.  Thus, even if Mr. Gaudreau's interest could be considered a net profits interest, that fact alone does not compel a finding of an economic interest here if the requirements for such an interest—including an investment of capital and the return of that investment solely from extraction—have not been met.

Plaintiffs also cite to IRS Private Letter Ruling[2] 200102010, 2001 WL 30741 (Jan. 12, 2001), in which the IRS noted that, under Treasury Regulation § 1.614-1(a)(2), 26 C.F.R. § 1.614-1, the term "interest" means an economic interest in a mineral deposit and includes net profits interests.  That regulation does not state, however, that all net

---

[2]Private letter rulings are not binding authority, but may be cited as evidence of agency interpretation; a court should not defer to an agency's interpretation of a statute, however, if that interpretation conflicts with the plain language of the statute. *See True Oil Co. v. Commissioner of Internal Revenue*, 170 F.3d 1294, 1032 (10th Cir. 1999).

profits interests qualify as economic interests.  Even if it did mean that, "net profits interest" would have to be defined in that context to include all requirements for an economic interest under the Supreme Court's interpretation of the depletion allowance and Regulation 1.611-1—which require satisfaction of the two-prong test.  Regulation 1.614-1 certainly does not compel the conclusion that Mr. Gaudreau's interest in net profits under the Agreement constitutes an economic interest that qualifies for the depletion allowance.

Accordingly, Mr. Gaudreau cannot satisfy either prong of the applicable test, and the Court therefore concludes as a matter of law that Mr. Gaudreau did not acquire an economic interest in the minerals in this case.  Just as a mere agreement for compensation for extraction of a mineral does not convey a depletable economic interest, *see* Treas. Reg. 1.611-1(b)(1), neither does Mr. Gaudreau's compensation for locating services qualify as an economic interest in this case—in the parlance of the Supreme Court and the regulation, Mr. Gaudreau obtained only an economic advantage. Therefore, plaintiffs are not entitled to the depletion deductions or the capital gains treatment that they seek.  Summary judgment is thus warranted in favor of defendant, and plaintiffs' motion for summary judgment must be denied.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for summary judgment (Doc. # 23) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 21) is hereby **granted**, and defendant is awarded judgment on plaintiffs' claims.

IT IS SO ORDERED.

Dated this 29th day of December, 2014, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge